**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES MCKEE II, individually and on behalf of all others similarly situated,** | : | **Civil Action No.: 2:26-cv-00644-MRH** |
| ***Plaintiff,*** | : | |
| **v.** | : | **<u>JURY TRIAL DEMANDED</u>** |
| **KNEPPER PRESS CORPORATION; MARKETING.COM, LLC; JAL EQUITY CORP.; and ERAN SALU, jointly and severally,** | : | |
| ***Defendants.*** | : | |

## FIRST AMENDED CLASS ACTION COMPLAINT

AND NOW comes the Plaintiff, James McKee II, on behalf of himself and all others similarly situated, by and through his attorneys, HKM Employment Attorneys, LLP, specifically, Justin M. Bahorich, Esq., and files this First Amended Class Action Complaint, alleging as follows:

1. Defendants deducted money from their employees' paychecks for deposit into a 401(k) retirement plan and did not deposit it. Defendants admitted as much in the Plan's own annual reports for 2022 and 2023, then stopped filing annual reports altogether. Plaintiff brings claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), and the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 et seq. ("WPCL").

## PARTIES

2. Plaintiff James McKee II is an adult individual residing in Allegheny County, Pennsylvania. He worked at Defendants' Clinton, Pennsylvania facility from in or around 2007 until on or about February 17, 2026, and participated in the Plan defined below throughout his employment.

3. Defendant Knepper Press Corporation ("Knepper Press") is a Pennsylvania corporation with a principal place of business at 2251 Sweeney Drive, Clinton, Pennsylvania. It employed Plaintiff and the members of the proposed classes, issued their wages, and made the payroll deductions at issue. It ceased operations on or about February 17, 2026.

4. Knepper Press is the Plan Sponsor, the Plan Administrator, and the named fiduciary of the Plan.

5. Defendant Marketing.com, LLC ("Marketing.com") is a Missouri limited liability company with a principal place of business at 101 Workman Court, Eureka, Missouri. Upon information and belief, it acquired all of the outstanding stock of Knepper Press in or about October 2022 and thereafter owned and controlled it.

6. Upon information and belief, Marketing.com directed the centralized payroll, human resources, and treasury functions through which employee wages were processed and through which amounts withheld for the Plan were held and disbursed. Marketing.com personnel also performed Plan administrative functions: the attachment to the Plan's 2023 annual report explaining the absence of the required accountant's report was submitted over the signature of Denise Patterson, identified as "Regional HR Leader," from an electronic mail address at the marketing.com domain.

7. Defendant JAL Equity Corp. ("JAL Equity") is a Nevada corporation with a principal place of business at 101 Workman Court, Eureka, Missouri. Upon information and belief, JAL Equity owns Marketing.com.

8. Defendant Eran Salu is an adult individual who, upon information and belief, resides in Sarasota, Florida. He is the founder, owner, and a senior corporate officer of JAL Equity and of Marketing.com.

9. Upon information and belief, Mr. Salu held signature authority over the accounts into which the withheld amounts were deposited, determined which of Defendants' obligations were paid and in what order during the period of non-remittance, and directed, approved, or knowingly acquiesced in the decision to retain those amounts rather than transmit them to the Plan.

## THE PLAN

10. The Knepper Press Corporation 401(k) Profit Sharing Plan (the "Plan"), Plan Number 001, EIN 25-1260030, is an employee pension benefit plan within the meaning of 29 U.S.C. § 1002(2)(A) and an individual account plan within the meaning of 29 U.S.C. § 1002(34).

11. Delaware Charter Guarantee & Trust Company, doing business as Principal Trust Company, is the Plan's Trustee. Principal Financial Services, Inc. and its affiliates ("Principal") serve as recordkeeper.

12. The Plan reported 191 participants as of the beginning of the 2023 plan year. Because the Plan had one hundred or more participants, the seven-business-day period of 29 C.F.R. § 2510.3-102(a)(2)(i) is unavailable to Defendants, and Defendants were required to engage an independent qualified public accountant and file the accountant's report with the Plan's annual report. 29 U.S.C. § 1023(a)(3).

13. The Plan is a total participant-directed account plan. Participants direct the investment of the assets in their individual accounts.

14. The Plan provides for automatic enrollment. Newly eligible employees are enrolled at a default deferral rate of five percent of eligible compensation, invested in a designated balanced fund, unless they affirmatively elect otherwise.

15. The Plan provides for employer matching contributions. As described in the Plan's audited financial statements, the employer contributes forty percent of a participant's deferral contribution, to a maximum of five percent of the participant's eligible compensation. Matching contributions accrue as participants defer and are recorded as a liability of the employer to the Plan.

16. Participants are immediately vested in their own deferrals and rollover contributions. Vesting in employer matching and discretionary contributions is graded: twenty percent after two years of credited service, increasing twenty percent each year, reaching one hundred percent after six years.

17. Mr. McKee is a participant in the Plan within the meaning of 29 U.S.C. § 1002(7), maintains an account under the Plan, and has a colorable claim to benefits.

18. By correspondence dated September 28, 2026, counsel for Defendants identified the Plan and represented that the Summary Plan Description, Trust Agreement, and Adoption Agreement, including the formal Plan Document, were being furnished to Plaintiff's counsel. Those documents were not furnished. Plaintiff pleads the terms of the Plan on information and belief and reserves the right to amend upon their production.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over Plaintiff's ERISA claims under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) and (f), and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

20. Venue is proper in this District under 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2). The Plan was administered here, the breaches occurred here, Defendants employed Plaintiff and the proposed classes here, and Knepper Press resides here.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action on behalf of himself and the following proposed classes:

**a. ERISA Class**

> All persons who were participants in The Knepper Press Corporation 401(k) Profit Sharing Plan at any time from January 1, 2022 through February 17, 2026, from whose wages amounts were deducted for employee elective contributions or for the repayment of a participant loan, and whose deducted amounts were not deposited into the Plan on or before the date prescribed by 29 C.F.R. § 2510.3-102, or were deposited without the earnings those amounts would have accrued had they been timely deposited.

**b. WPCL Subclass**

> All persons employed by Knepper Press in the Commonwealth of Pennsylvania at any time from January 1, 2022 through February 17, 2026 whose earned wages or wage supplements were not paid on or before the payday required by 43 P.S. §§ 260.3 and 260.5.

22. Excluded are Defendants, their officers and directors, any judge presiding over this action, and any attorney entering an appearance. Plaintiff reserves the right to modify the class definitions or add subclasses based on facts obtained in discovery.

23. **Numerosity – Fed. R. Civ. P. 23(a)(1).** Upon information and belief, the Plan had approximately 191 participants as of the beginning of the 2023 plan year, making joinder

impracticable. Class members are readily ascertainable from Defendants' payroll records, the Plan's records, and the Plan's annual reports.

24. **Commonality – Fed. R. Civ. P. 23(a)(2).** This action presents questions of law and fact common to the class, including: (a) whether the amounts deducted from participants' wages were assets of the Plan; (b) whether each Defendant was a fiduciary with respect to those assets; (c) whether Defendants failed to deposit those amounts into the Plan by the date prescribed by 29 C.F.R. § 2510.3-102; (d) whether Defendants restored to the Plan the earnings those amounts would have accrued; (e) whether Defendants made the employer contributions required by the terms of the Plan; and (f) the appropriate measure of relief.

25. **Typicality – Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of the class. Plaintiff and the class members were subject to the same payroll and remittance practices and were injured by the same course of conduct.

26. **Adequacy – Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the class. Plaintiff's interests do not conflict with those of the class, and Plaintiff has retained counsel experienced in employment and class litigation.

27. **Rule 23(b)(1).** Count I is brought in a representative capacity on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Prosecuting separate actions by individual participants would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendants, and adjudications with respect to individual participants would as a practical matter be dispositive of the interests of the other participants or substantially impair their ability to protect those interests.

28. **Rule 23(b)(3).** In the alternative, common questions predominate over any questions affecting only individual members, and a class action is superior to other available

methods for the fair and efficient adjudication of this controversy. The individual losses are small relative to the cost of individual litigation, and the relevant facts are common to all class members and are contained in Defendants' own records.

## FACTUAL ALLEGATIONS

### a. The amounts withheld from employees' wages were assets of the Plan.

29. Under 29 C.F.R. § 2510.3-102(a)(1), amounts a participant has withheld from his wages by an employer, for contribution or for repayment of a participant loan to the plan, become assets of the plan as of the earliest date on which they can reasonably be segregated from the employer's general assets. In no event may that date fall later than the fifteenth business day of the month following the month of withholding. 29 C.F.R. § 2510.3-102(b)(1).

30. Defendants operated an automated payroll system and an established remittance channel to the Plan's recordkeeper, and could reasonably have segregated and transmitted each deduction within days of the pay date on which it was taken.

31. Each amount deducted from the wages of Plaintiff and the ERISA Class for contribution to the Plan or for repayment of a participant loan was therefore an asset of the Plan, which Defendants held for the Plan's benefit.

### b. Defendants admitted the failure in the Plan's annual reports.

32. Line 4a of Schedule H to the Form 5500 asks whether there was "a failure to transmit to the plan any participant contributions within the time period described in 29 CFR 2510.3-102," and directs the filer to "[c]ontinue to answer 'Yes' for any prior year failures until fully corrected."

33. The Plan's annual reports for plan years 2019, 2020, and 2021 answered that question "No." True and correct copies are attached as Exhibits A, B, and C.

34. The Plan's annual report for plan year 2022 answered "Yes" and reported $4,838. A true and correct copy is attached as Exhibit D.

35. The 2022 report was signed on July 9, 2025 by Chelsey King, as plan administrator and as employer and plan sponsor.

36. The Plan's annual report for plan year 2023 answered "Yes" and reported $78,709 — more than sixteen times the prior year. A true and correct copy is attached as Exhibit E.

37. The 2023 report was signed on October 14, 2024 by Kate Fenlon, as plan administrator and as employer and plan sponsor.

38. Schedule H to that report also shows $44,817 in participant contributions receivable as of December 31, 2023, representing amounts withheld from participants' wages and not deposited. *Id.*

39. Defendants thus admitted, in filings made under penalty of perjury with the United States Department of Labor, that they failed to transmit participant contributions to the Plan within the time prescribed by regulation in two consecutive plan years, in escalating amounts, and that the failures were not fully corrected when each report was filed.

40. No accountant's report accompanied the 2023 annual report. In its place Defendants filed an attachment stating that "[t]he audit for the 2023 Plan Year has not been completed" and that "[a]n accountant's audit will be submitted within 45 days." *Id.*

41. Upon information and belief, no such report was ever submitted, and no annual report has been filed for the 2024 or 2025 plan years.

42. The failure to obtain and file the required accountant's report deprived participants of the independent examination that would have disclosed the extent and duration of the unremitted contributions.

**c. <u>Defendants stopped funding the employer contribution after 2022.</u>**

43. The Plan's annual reports show employer contributions of $178,037 for 2019, $121,873 for 2020, $128,742 for 2021, and $141,570 for 2022. The 2022 amount was accrued as a receivable at year end and remitted the following year.

44. The Plan's annual report for 2023 reports no employer contribution received and no employer contribution receivable. *Id.*

45. Upon information and belief, Defendants failed to make employer matching contributions for the 2023, 2024, or 2025 plan years, or for 2026, while continuing to accept participants' elective deferrals.

**d. <u>Defendants deducted from Mr. McKee's wages and failed to deposit the amounts.</u>**

46. Mr. McKee elected to contribute a percentage of his biweekly wages to his Plan account. In or around November 2023 he took a $5,000.00 loan against that account and established a repayment schedule under which Defendants deducted approximately $50.00 from each biweekly paycheck for transmission to the Plan. He had repaid an earlier Plan loan through the same mechanism without incident.

47. From July 2025 through January 2026, Defendants continued to deduct Mr. McKee's elective contributions and loan repayments from his paychecks. They failed to deposit those amounts into the Plan by the date prescribed by 29 C.F.R. § 2510.3-102.

48. Upon information and belief, Defendants applied the same payroll and remittance practice to every participant, and the amounts deducted from other participants' wages likewise were not timely deposited.

49. To the extent any deducted amounts were later deposited, upon information and belief, Defendants failed to restore the earnings those amounts would have accrued.

**e. <u>Mr. McKee gave notice and Defendants acknowledged the shortfall.</u>**

50. On October 21, 2025, Mr. McKee received notice from Principal that his loan was "at risk of defaulting due to missed payments."

51. That day, Mr. McKee's wife forwarded the notice to Michele Legros and Laura Dickinson in Defendants' human resources department, writing, "We having [sic] been getting the loan amount deducted from his check every two weeks. There hasn't been any contributions since July. I don't understand what is going on here."

52. On October 27, 2025, Ms. Legros responded that "the payment form 7/26 payroll was remitted to the principal 401 K and they are working on [] remitting the rest of the payments," and asked the McKees to confirm whether the funds had been transferred.

53. Defendants remitted the amounts deducted on July 26, 2025 and August 10, 2025, but not until October 2025.

54. The statement from Defendants' human resources employees that they were "working on remitting the rest of the payments" confirms that further amounts deducted from participants' wages remained undeposited as of October 27, 2025.

**f. <u>Defendants retained and used the withheld amounts.</u>**

55. Upon information and belief, Defendants deposited the amounts withheld for the Plan into their general operating accounts, commingled them with their general assets, and used them to pay operating expenses and other obligations rather than transmitting them to the Plan.

56. Defendants retained possession and control of those amounts beyond the earliest date on which they could reasonably have been segregated.

**g. <u>Defendants discontinued the Plan and ceased operations.</u>**

57. In January 2026, Defendants discontinued the 401(k) benefit for all employees.

58. On February 17, 2026, they terminated the employment of all employees and announced that they were no longer in business.

59. Upon the termination of a plan or the complete discontinuance of contributions under it, the rights of all affected participants to their accrued benefits become nonforfeitable. 26 U.S.C. § 411(d)(3).

60. Upon information and belief, Defendants failed to fully vest the accounts of participants who had not completed six years of credited service.

61. Since February 17, 2026, Defendants have maintained no personnel, office, or procedure capable of receiving or deciding a claim for benefits under the Plan, and upon information and belief no claim or appeal submitted under the Plan would be received, reviewed, or decided.

**h. <u>Defendants failed to pay wages earned.</u>**

62. In January and February 2026, Defendants failed to deliver Mr. McKee's paycheck on the scheduled payday, and they have never paid him for the final days he worked before the closure.

63. Upon information and belief, Defendants likewise failed to pay other Pennsylvania employees their earned wages on or before the payday required by 43 P.S. §§ 260.3 and 260.5.

**i. <u>Defendants failed to reimburse Mr. McKee for repairs to their property.</u>**

64. Defendants owned a tractor used for snow removal and landscaping that required repairs to remain operational.

65. Mr. McKee and Defendants agreed that he would perform the repairs and track his time and materials, and that Defendants would reimburse him through additional compensation in his biweekly paychecks.

66. Mr. McKee performed the repairs and incurred labor and material costs. On or about February 17, 2026, Defendants ceased operations and demanded the tractor's return, and Mr. McKee complied.

67. Defendants have not reimbursed Mr. McKee, who is owed approximately $1,000.00 for the labor and materials.

## CAUSES OF ACTION

### COUNT I
### BREACH OF FIDUCIARY DUTY
### IN VIOLATION OF ERISA
### 29 U.S.C. §§ 1104, 1106, 1109 and 1132(a)(2)
***Plaintiff and the ERISA Class v. All Defendants, jointly and severally***

68. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

69. Knepper Press is a fiduciary as the Plan's named fiduciary and Plan Administrator, and under 29 U.S.C. § 1002(21)(A)(i) because it withheld amounts from participants' wages, held them in its own accounts, and controlled whether and when they were transmitted to the Plan.

70. Upon information and belief, Marketing.com and JAL Equity are fiduciaries under 29 U.S.C. § 1002(21)(A)(i) because they directed the payroll and treasury functions through which the withheld amounts were held and disbursed and controlled whether and when those amounts reached the Plan.

71. Upon information and belief, Mr. Salu is a fiduciary under 29 U.S.C. § 1002(21)(A)(i) because he exercised authority and control over the disposition of Plan assets — holding signature authority over the accounts containing them, deciding which obligations were

paid and in what order, and directing or approving their retention. The asset-control clause of that provision requires no discretionary authority.

72. Each Defendant is alleged to be a fiduciary only to the extent of, and with respect to, the receipt, custody, and disposition of the amounts withheld from participants' wages.

73. As fiduciaries, Defendants were required to act solely in the interest of participants, for the exclusive purpose of providing benefits, with the care and prudence of a prudent fiduciary, and in accordance with the documents governing the Plan. 29 U.S.C. § 1104(a)(1).

74. Defendants were required to hold Plan assets in trust, and were prohibited from transferring Plan assets to, or permitting their use by, a party in interest, and from dealing with Plan assets in their own interest. 29 U.S.C. §§ 1103, 1106(a)(1)(B), 1106(a)(1)(D), 1106(b)(1).

75. Defendants are parties in interest. 29 U.S.C. § 1002(14).

76. Defendants breached those duties by failing to deposit the withheld amounts by the date prescribed by 29 C.F.R. § 2510.3-102; by retaining, using, and commingling those Plan assets; by failing to make the employer contributions the Plan required; and by transmitting paystubs and payroll records reflecting the deductions while failing to disclose that the amounts had not been deposited.

77. As a direct and proximate result, the Plan and the individual accounts of Plaintiff and the ERISA Class suffered losses, including the earnings the withheld amounts would have accrued, any amounts that remain undeposited, and the loss of employer contributions.

78. Depositing principal alone does not make the Plan whole. A breaching fiduciary is personally liable both to make good to the plan any losses resulting from the breach and to restore to the plan any profits made through the use of plan assets. 29 U.S.C. § 1109(a).

79. Upon information and belief, Defendants profited by applying the withheld Plan assets to their own obligations and thereby avoiding the cost of alternative financing.

80. This Count is brought in a representative capacity on behalf of the Plan under 29 U.S.C. § 1132(a)(2). It alleges violations of ERISA's statutory duties rather than a claim for benefits under the terms of the Plan, and no exhaustion of Plan remedies is required.

WHEREFORE, Plaintiff, individually and on behalf of the ERISA Class, requests judgment against Defendants, jointly and severally, awarding restoration to the Plan of all losses resulting from Defendants' breaches, restoration of all profits made through the use of Plan assets, allocation of those amounts to the individual accounts of Plaintiff and the ERISA Class, removal of Defendants as fiduciaries, attorneys' fees and costs under 29 U.S.C. § 1132(g)(1), interest, and such other relief as the Court deems just.

**COUNT II**
**EQUITABLE RELIEF TO RESTORE PLAN ASSETS**
**Constructive Trust, Accounting, and Removal of Fiduciaries**
**29 U.S.C. § 1132(a)(3)**
***Plaintiff and the ERISA Class v. All Defendants, jointly and severally***

81. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

82. This Count seeks relief different in kind from Count I and is not duplicative of it.

83. Defendants took possession of Plan assets and commingled them with their general funds. Those assets, and any funds or property traceable to them, are held for the benefit of the Plan. Plaintiff seeks a constructive trust and equitable lien over the withheld amounts and any property traceable thereto.

84. Plaintiff further seeks an accounting of all amounts withheld from participants' wages for the Plan, all amounts transmitted to the Plan and the date of each transmission, and the disposition of the difference.

85. Plaintiff further seeks removal of Defendants as fiduciaries, appointment of an independent fiduciary to administer and if appropriate terminate the Plan, an injunction requiring Defendants to transmit all amounts that remain undeposited together with the earnings they would have accrued, and an order requiring Defendants to correct the tax treatment of any participant loan treated as a deemed distribution as a result of their failure to transmit withheld loan repayments, including by application under the Internal Revenue Service's Employee Plans Compliance Resolution System.

WHEREFORE, Plaintiff, individually and on behalf of the ERISA Class, requests judgment against Defendants granting the equitable relief described above, together with attorneys' fees and costs under 29 U.S.C. § 1132(g)(1), and such other relief as the Court deems just.

**COUNT III**
**CLAIM FOR BENEFITS DUE UNDER THE TERMS OF THE PLAN**
**29 U.S.C. § 1132(a)(1)(B)**
**(Pled in the alternative)**
***Plaintiff and the ERISA Class v. Defendant Knepper Press Corporation***

86. Plaintiff incorporates the preceding paragraphs as if fully set forth herein. This Count is pled in the alternative to Counts I and II.

87. Under the terms of the Plan, Defendants were required to credit each participant's account with the amounts deducted from that participant's wages for elective contributions and loan repayments, and to make the matching contributions the Plan specifies. Matching contributions accrued as participants deferred and were recorded as a liability of the employer to the Plan.

88. Defendants failed to credit those amounts and, from plan year 2023 forward, failed to make the matching contributions.

89. Plaintiff and the ERISA Class are entitled to recover the benefits due under the terms of the Plan, to enforce their rights under the terms of the Plan, and to clarify their rights to future benefits. 29 U.S.C. § 1132(a)(1)(B).

90. Any requirement to exhaust the Plan's administrative remedies is excused. Defendants ceased operations, terminated all personnel, and have neither established nor followed claims procedures meeting the requirements of 29 C.F.R. § 2560.503-1. Plaintiff and the ERISA Class are therefore deemed to have exhausted the remedies available under the Plan. 29 C.F.R. § 2560.503-1(l). In the alternative, resort to those remedies would be futile because no person remains to receive or decide a claim.

WHEREFORE, Plaintiff, individually and on behalf of the ERISA Class, requests judgment against Knepper Press Corporation awarding all benefits due under the terms of the Plan, interest, attorneys' fees and costs under 29 U.S.C. § 1132(g)(1), and such other relief as the Court deems just.

**COUNT IV**
**VIOLATION OF THE PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW, 43 P.S. § 260.1 *et seq.***
**(Unpaid Wages)**
***Plaintiff and the WPCL Subclass v. All Defendants, jointly and severally***

91. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

92. This Count concerns wages earned and unpaid and does not seek any amount deducted for the Plan.

93. Each Defendant is an "employer" under 43 P.S. § 260.2a, which includes every corporation and any agent or officer thereof employing any person in this Commonwealth.

94. Upon information and belief, Mr. Salu exercised a policy-making function with respect to the payment of wages and was an active decision maker as to the non-payment alleged here.

95. Plaintiff and the WPCL Subclass were parties to express or implied contracts of employment entitling them to be paid their earned wages at the intervals required by 43 P.S. § 260.3 and, upon separation, no later than the next regular payday under 43 P.S. § 260.5.

96. Plaintiff and the WPCL Subclass performed the work for which those wages were earned, and Defendants failed to pay them.

97. No good faith contest or dispute of these wage claims exists.

98. Because the wages have remained unpaid for more than thirty days beyond the regularly scheduled payday, Plaintiff and the WPCL Subclass are entitled to liquidated damages of twenty-five percent of the wages due or five hundred dollars, whichever is greater, 43 P.S. § 260.10, and to reasonable attorneys' fees, 43 P.S. § 260.9a(f).

WHEREFORE, Plaintiff, individually and on behalf of the WPCL Subclass, requests judgment against Defendants, jointly and severally, for all unpaid wages, liquidated damages under 43 P.S. § 260.10, attorneys' fees under 43 P.S. § 260.9a(f), costs, interest, and such other relief as the Court deems just.

## COUNT V
## VIOLATION OF THE PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW, 43 P.S. § 260.1 *et seq.*
## (Unpaid Wage Supplements)
***Plaintiff, individually, v. All Defendants, jointly and severally***

99. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

100. Defendants agreed to reimburse Mr. McKee for his labor and material costs in repairing their tractor through additional compensation in his biweekly paychecks. Those amounts are wages under 43 P.S. § 260.2a, which defines "fringe benefits or wage supplements" to include reimbursement for expenses.

101. Mr. McKee performed, Defendants failed to pay, the amounts have remained unpaid for more than thirty days beyond the regularly scheduled payday, and no good faith contest or dispute accounts for the non-payment.

WHEREFORE, Plaintiff requests judgment against Defendants, jointly and severally, for all amounts due, liquidated damages under 43 P.S. § 260.10, attorneys' fees under 43 P.S. § 260.9a(f), costs, interest, and such other relief as the Court deems just.

**COUNT VI**
**BREACH OF CONTRACT**
***Plaintiff, individually, v. All Defendants, jointly and severally***

102. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

103. A claim for breach of contract requires the existence of a contract with essential terms, a breach of a duty imposed by that contract, and resulting damages. *Harley v. Healthspark Found.*, 265 A.3d 674, 685 (Pa. Super. 2021).

104. Mr. McKee and Defendants entered into a valid and enforceable agreement under which he would repair their tractor and track his labor and materials, and Defendants would reimburse him through additional compensation in his paychecks.

105. Plaintiff performed his obligations under the agreement.

106. Defendants breached by failing to compensate or reimburse him.

107. All conditions precedent have occurred or been satisfied.

108. As a direct and proximate result, Mr. McKee has suffered damages of approximately $1,000.00.

WHEREFORE, Plaintiff requests judgment against Defendants, jointly and severally, for compensatory and expectation damages, interest, costs, and such other relief as the Court deems just.

## COUNT VII
## QUANTUM MERUIT / UNJUST ENRICHMENT
## (Pled in the alternative)
***Plaintiff, individually, v. All Defendants, jointly and severally***

109. Plaintiff incorporates the preceding paragraphs.

110. Mr. McKee conferred a benefit on Defendants by repairing their tractor and supplying the labor and materials to restore it to working condition.

111. Defendants knowingly accepted and retained that benefit, aware that he expected to be compensated, and did not pay him.

112. It would be inequitable for Defendants to retain the benefit of Mr. McKee's labor and materials without paying their value.

WHEREFORE, Plaintiff requests judgment against Defendants, jointly and severally, for restitution, disgorgement, the reasonable value of services rendered, interest, costs, and such other relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Plaintiff and the prospective Class and Subclass Members demand a trial by jury on all issues so triable.

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS LLP**

Date: September 28, 2026

By: _*/s/ Justin M. Bahorich*_______

Justin M. Bahorich, Esq.
Pa. I.D. No. 329207

HKM Employment Attorneys LLP
220 Grant Street, Suite 401
Pittsburgh, PA 15219
(412) 310-2737
jbahorich@hkm.com

*Counsel for Plaintiff and the Prospective Classes*